UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KATHY KOCUREK ET AL.                    CIVIL ACTION NO. 6:16-cv-00543

VERSUS                                  JUDGE FOOTE

FRANK'S CASING CREW &                   MAGISTRATE JUDGE HANNA
RENTAL TOOLS, LLC, ET AL.

## RULING ON MOTION

Currently pending is the plaintiffs' motion to compel (Rec. Doc. 50). The motion is opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs Kathy Kocurek and Le Chat Interiors, Inc. (collectively "Le Chat") have brought a breach of contract claim against Frank's Casing Crew & Rental Tools LLC ("Frank's") and a tortious interference with contract claim against the former President and CEO of Frank's, Gary Luquette. On March 14, 2013, Le Chat and Frank's executed a Letter of Engagement pursuant to which Le Chat was to perform interior design services for an office building that was being constructed by Frank's. [Rec. Doc. 50-4, p. 2]. The Letter was executed on behalf of Frank's by Keith Mosing who was the President and CEO of Frank's at the time. [Id.] The Letter confirmed an

"agreement for interior design services to be performed by Le Chat . . . to complete the project at Frank's . . ." [Id.] The terms contained in the Letter were as follows:

> The design concept and implementation shall include developing a color scheme, sourcing furniture, spatial planning, fixtures, wall coverings, fabrics, and materials; design custom furniture and built ins; design window treatments where applicable; selection of materials for flooring, counters and cabinetry, hardware, and presentation of selections that represent the best choices for your space.
>
> For the professional services described, the designer's compensation shall be $100.00 per hour billed on a monthly basis.

In 2015, Frank's corporate leadership changed and Luquette became the President and CEO. On March 12, 2015, Luquette terminated the services provided by Le Chat prior to completion of the project. [Rec. Doc. 50-4, p. 5]. Gensler Architecture, Design & Planning, P.C. ("Gensler") provided Frank's with a "Key Findings Report" dated March 9, 2015 in which Gensler proposed recommendations for the interior design of the project. [Rec. Doc. 50-4, pp. 143- 153]. On March 23, 2015, Luquette, on behalf of Frank's, signed a contract with Gensler that had an effective date of February 27, 2015. [Rec. Doc. 50-4, pp. 154-159].[1] The Subject Line provides "Agreement for Interior Architectural Services." [Rec. Doc. 50-4, p. 154]. The Gensler "Basic Services" are described as follows:

---

[1]The Agreement is dated on page one as March 13, 2015 with revision dates of March 16 and March 20.

> [D]esign services for all interiors beyond the core on levels one through four, including office and workstations space, meeting spaces, common areas, and storage; and signs required by code, and coordination of design services for the following building systems or components currently being provided by other consultants: mechanical, electrical, plumbing, structural, and lighting engineering.

[Id. p. 155].

Gensler was to be compensated for Basic Services in a lump sum (which is redacted) that was broken down into Phase One and Two Architectural Services, Phase Three Architectural Services and Furniture Selection and Specifications. [Id. p. 158]. In addition, there was a cost plus arrangement (also redacted) for reimbursable expenses and other consultant fees invoiced through Gensler. [Id.].

Gensler issued Work Authorizations which are contained in Exhibit C to the plaintiffs' motion. [Rec. Doc. 50-5].[2] The Work Authorizations contain a myriad of services and materials provided to, and ostensibly paid for by, Frank's. The Work Authorizations are signed by representatives of Gensler and Frank's and contain pricing information in each. The services described in the Work Authorizations far exceed those set forth in the Letter Agreement provided by Le Chat.

Exhibit C also contains internal reports from Frank's personnel reviewing the project, reporting of site visits, and making recommendations. [Rec. Doc. 50-5, Conf.

---

[2]For reasons unknown, the pages are not numbered with headers in the record, however, they are marked by the parties as "Confidential Def pp. 171- 241"

Def. pp. 242- 247]. It is clear from these documents that there are multiple contractors/vendors in a variety of areas that do not include work done by LeChat and would not have ever been under Le Chat's direction.

By this motion, the plaintiffs seek two types of information. First, they want detailed, "specific itemizations of payments for interior design work on the Project that include: a) the identity of the person paid; b) the amount paid; c) payment dates: and d) and itemized description of the work performed, i.e. payment for furniture, rugs, draperies, etc." [Rec. Doc. 50-1, p. 2]. In another part of the motion, the plaintiffs request "invoices and payment for interior design work actually performed to complete the Frank's office Project and invoices and payments for furniture and other interior design furnishings actually purchased for use in the Project building." [Rec. Doc. 50-1, p.5]. Secondly, the plaintiffs seek documents related to changes or modifications to the project's budget and time to complete the project.

Frank's responded with four primary objections: (a) the plaintiffs have no discovery request actually addressing the items requested pertaining to invoices, payments, etc.; (b) Le Chat would not have received any compensation for those things purchased for Frank's, i.e. furnishings and finishes, other than her hourly rate, and therefore, it is not relevant information; (c) they have already provided adequate information pertaining to prices; and (d) Luquette has already testified to the

budget/time for completion of the project and to require Frank's to now produce all of the project data is disproportional to the needs of the case.

## APPLICABLE LAW AND ANALYSIS

As a threshold matter, the Court finds that the payment information sought by the plaintiffs does fall within the scope of Request for Production number 12. The Court further finds that Frank's has satisfactorily answered Interrogatory numbers 5 and 16.

Resolution of this motion is determined by application of Fed.R.Civ.P. 26(b)(1), which provides that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim. . ." The relevancy determination is tied to the applicable substantive law and is tempered by the balancing of six proportionality factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The plaintiffs have sued Frank's for breach of the Letter Agreement. "The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach),

and (3) the failure to perform resulted in damages to the obligee." *Denham Homes, LLC. V. Teche Federal Bank*, 2014-1576 (La. App. 1 Cir. 09/18/15), 182 So.23d 108, 119, *citing* La. Civ. Code art. 1944 and *Favrot v. Favrot*, 10–0986 (La. App. 4 Cir. 02/09/11), 68 So.3d 1099, 1108-09, *writ denied*, 11-0636 (La. 05/06/11), 62 So.3d 127. Pursuant to La. Civ. Code art. 1995, "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."

The plaintiffs contend that the itemized invoices/payments are relevant to their computation of damages of lost profits for the breach of contract claim. The Letter Agreement provides that Le Chat would "source furniture" among other things. While Le Chat was only to be compensated on an hourly basis, with no commission on furnishings purchased, the plaintiff contends that by knowing what was purchased, when, where, and by whom, Le Chat can calculate what time might have been spent had the Letter Agreement not been terminated, and thereby compute the lost profits based on the hourly rate. While this Court makes no comment on the viability of this method of attempting to prove damages, from a discovery standpoint the information sought is relevant. Further, the proportionality factors do not weigh in favor of disallowing this limited discovery. Therefore, Frank's will be ordered to produce only those itemized invoices/payments for purchases that actually were made under the third item of compensation in the Gensler agreement for Furniture Selection and

Specifications and that would also fall under the category of furniture or interior design furnishings *as specifically set forth in the Letter Agreement.*

The plaintiffs have also sued Mr. Luquette personally for tortious interference with contract. Under *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 231 (La. 1989), an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult, or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The elements are as follows: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) the absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer. *Id.* at 234.

The Court's ruling as to the documents set forth above also applies to this cause of action but only as it pertains to the calculation of damages. In all other respects, the response by the defendant to Request Number 16 is adequate particularly

when considered in the context of Mr. Luquette's testimony. Furthermore, production of all documents related to all aspects of the budget fails the proportionality analysis under the facts of this case. Therefore, the motion is denied as to the remaining items sought.

## CONCLUSION

For the foregoing reasons, the motion to compel is granted in part and denied in part. Specifically, the motion is GRANTED insofar as the defendant is ordered to produce those documents responsive to Request for Production No. 16 relating to purchases that actually were made under the third item of compensation in the Gensler agreement for Furniture Selection and Specifications and that also fall under the category of furniture or interior design furnishings *as specifically set forth in the Letter Agreement*. The production shall be made within 7 days of this date unless such a time frame is a hardship in which event counsel should contact the Court. In all other respects the motion is DENIED.

Signed at Lafayette, Louisiana on this 5th day of May 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE